**In re KERNICK DIVIDE MINING CO.**

**No. 477.**

District Court, D. Nevada.

April 13, 1936.

Walter Rowson, of Reno, Nev., for William Royle.

Wayne T. Wilson, of Reno, Nev., for Grace V. Ward and others.

NORCROSS, District Judge.

This is a petition to review an order of the referee made on hearing had upon the trustee's sixth report. So much of the order as is in question has its basis upon a preliminary finding which reads: "* * * the Referee finds as a matter of fact that the secured claim of William Royle, as Nevada State Labor Commissioner, filed herein, is entitled to be paid in full prior to the secured claims filed herein, by Grace V. Ward, R. R. Reed, and Wayne T. Wilson. * * *"

Following the foregoing finding, the order complained of provides: "Ordered, adjudged and decreed, that the secured claim of William Royle, * * * constitutes a first lien on the assets * * * and that a dividend of 40% or $2000.00 be forthwith paid * * * to William Royle * * *; that a 10% dividend be paid * * * forthwith on the second claims of R. R. Reed, Grace V. Ward and Wayne T. Wilson, filed herein."

The petition asserts error in the order under review, among other respects as follows:

"In that on the 18th day of January, 1933, the said William Royle, as Labor Commissioner of the State of Nevada, his attorney, Walter Rowson, and said Grace V. Ward, and your petitioner, did enter into a written agreement wherein and whereby it was agreed that all suits to determine priority of secured claims should be dismissed and that said secured creditors would accept payments on their claims pro rata out of payments to the Trustee for the sale of the property of said bankrupt corporation, a copy of said agreement being attached hereto, marked 'Petitioner's Exhibit E,' and made a part of this petition."

"In that there was not a pro rata distribution of the funds in the hands of the Trustee by said Order of said Referee to secured creditors of equal priority."

The question presented for determination is whether the said Royle claim is in the status of a preferred claim superior in right to payment to the claims of other preferred creditors referred to in the order.

Prior to the entry of the order of adjudication in bankruptcy, September 13, 1932, said claimant Grace V. Ward had been granted a decree of foreclosure of a mortgage upon certain of the property of the bankrupt by the Second Judicial District Court of the State of Nevada. Also, prior to the entry of such order of adjudication claimant William Royle as State Labor Commissioner had been granted a judgment by the Fifth judicial district court of the state of Nevada for foreclosure of certain labor liens, and in addition penalties imposed by state statute for

failure to pay labor claims. The judgment in the Ward suit was entered April 15, 1931, and that in the Royle suit July 20, 1932. On February 2, 1932, claimant Ward instituted a proceeding in the state Supreme Court for a writ of prohibition directed to the Fifth judicial district court prohibiting that court from proceeding to sell the property in satisfaction of the said Royle judgment. This proceeding was dismissed by the Supreme Court without prejudice on April 6, 1932. State ex rel. Ward v. Fifth Judicial Dist. Court, 54 Nev. 156, 9 P.(2d) 681. On March 4, 1932, said Royle, as Labor Commissioner, instituted suit in the Second judicial district court to set aside the decree of foreclosure of the Ward mortgage. A sheriff's sale of the mortgaged property in the Ward suit was noticed for June 8, 1932. On June 7, 1932, an order was issued by the Fifth judicial district court restraining sale under the Ward decree. On August 24, 1932, execution was issued out of the Fifth judicial district court in the said Royle suit, and thereon the property was noticed for sale September 24, 1932. On September 13, 1932, an order was issued by this court restraining sale of the property under execution issued upon the said Royle judgment. A motion to set aside the restraining order last mentioned was denied by this court by order of date April 26, 1933. In an opinion of the court accompanying the order last mentioned it was stated that the restraining order "should be continued in force until the rights of the respective parties under said decrees are determined as between themselves or between themselves and the general creditors in the state courts." In re Kernick Divide Mining Co. (D.C.) 3 F.Supp. 323, 326.

Proceedings were pending in the Second judicial district court of the state to determine the rights of the lien claimants under said respective judgments or decrees when the parties were advised by the trustee in bankruptcy that he had an offer of purchase of the property of the bankrupt estate by W. R. Ingram for a consideration of $13,500, conditioned that title be transferred free of said judgment liens. In pursuance of this offer of sale an agreement was entered into of date January 18, 1933, between the plaintiffs in said Royle and Ward suits and Wayne T. Wilson as receiver appointed by the court in said Ward suit, which agreement recites the entry of said judgments, the bid for purchase of the property and that said bid "is the best and only bid obtainable at this time." Following such recitals the agreement proceeds as follows:

"Now therefore, in consideration of the sum of One Dollar * * * and other valuable considerations which will accrue to each of said parties, by the ending of all litigation between said parties, each * * * agree with the other parties as follows:

"The party of the first part (Royle) hereby agrees to discontinue and cease all litigation upon his part * * * to collect his said judgment, in any sum greater than the agreed sum of $5,000.00, and that he will file forthwith a * * * release and waiver with the Referee in Bankruptcy, of any sum which may be due him for any part of his said judgment in excess of $5,000.00, and that he will accept said sum * * * pro rata out of the payments made to the Trustee in Bankruptcy (conditioned that there shall be no deduction from said amount for any reason whatsoever) as and when payments are made by the said W. R. Ingram under a certain agreement * * * to purchase the said property * * * and to accept said payment as and when dividends are ordered disbursed to the preferred creditors.

"The party of the second part (Ward) hereby agrees," etc. This paragraph of the agreement is substantially in the same form as that preceding with the exception that the statement in parenthesis therein respecting "no deduction" is not included.

The agreement concludes with a paragraph reading: "It is mutually agreed * * * that this agreement is entered into in good faith, for the sole purpose of ending litigation between the parties hereto. * * *"

Following the execution of such agreement the parties thereto in pursuance thereof filed with the referee claims or modified claims or waivers in excess of claims theretofore filed. Claimant Royle filed what was designated a waiver, which recited the amount of "judgment and decree of lien foreclosure" awarded to him in the sum of $8,919.38, together with interest for which a preferred claim had theretofore been filed with the referee. The concluding paragraphs of said waiver read:

"Whereas, negotiations have been this day concluded as between the undersign-

ed and other creditors claiming preferences against said bankrupt estate, whereby divers pending litigations between said claimants may be compromised and determined and the assets comprised in said bankrupt estate sold upon the best available terms and the proceeds of such sale distributed to the creditors thereto entitled:

"Now, therefore, in consideration of the premises, and conditioned upon the allowance of said preferred claim in said full sum of $8919.38 and interest as aforesaid, the undersigned does hereby release and waive all of the excess of said amount over and above the sum of $5000.-00, and further agrees to accept said sum of $5000.00 in full of his said preferred claim, to be paid pro rata out of such payments as may be made to the trustee in bankruptcy herein (conditioned that there shall be no deduction from said amount for costs, fees or for any reason or purpose whatsoever) as and when dividends arising from such sale proceeds are ordered disbursed to preferred creditors by the Referee in Bankruptcy herein."

The sale of the property to W. R. Ingram failed of accomplishment and some time later a sale was made by the Trustee to another purchaser for a consideration of $12,000, to be paid in installments over a period of time. It does not appear that any of the creditors protested this sale. As payments were made on account of the purchase price, dividends were declared and payments made pro rata to the preferred or secured creditors. Three such dividends had been declared and paid prior to the order in controversy made in conjunction with the approval of the trustee's sixth report. These prior dividends had been ordered and paid pro rata to the several preferred or secured creditors without question of any superior right of any such creditor.

The question here presented is whether under the agreement of January 18, 1933, the claimant Royle is entitled to have his claim paid in full notwithstanding the fact that the assets of the bankrupt estate were sold for an amount less than that contemplated in said agreement.

There is no basis for the finding "that the secured claim of William Royle * * * is entitled to be paid in full prior to the secured claims" of the other claimants, parties to the contract or referred to therein, or for the order that said Royle claim "constitutes a first lien on the assets." The rights of the parties under the two judgments as between themselves were never determined. The agreement provided for termination of pending litigation for that sole purpose.

If Royle as State Labor Commissioner has any superior right over the other preferred creditors it has its basis in the provision of the agreement that the amount to which his claim was reduced is "(conditioned that there shall be no deduction from said amount for any reason whatsoever) as and when payments are made by the said W. R. Ingram. * * *" In the waiver filed by the claimant Royle the condition was stated: "that there shall be no deduction from said amount for costs, fees or for any reason or purpose whatsoever." In view of the fact that the total amount of the preferred claims, after deductions consented to in the agreement, was $12,750.45, it appears that there remained a balance of about $750 applicable to payment of costs and fees in the administration of the bankrupt estate. From the evidence it appears that this amount would not be required for that purpose. That this among other surrounding circumstances would be taken into consideration in entering into the agreement we think there can be no question. Had the Ingram purchase, which was the foundation of the agreement, been effected, it is apparent that either all of the preferred creditors would have been paid in full, or if any deductions were required from the amounts payable to the preferred creditors other than the Labor Commissioner, such deductions would be slight. As there were no payments which could have precedence over preferred claims other than costs of administration of the bankrupt estate, it is reasonable to assume that the proviso related to payments of that character. The proviso as expressed in the waiver confirms this view.

While it is clear that if the sale to Ingram had been effected for the consideration stated in the agreement the Royle claim would have been entitled to be paid without deduction, it does not follow therefrom that when there was a failure to effect such sale and the property was subsequently sold for $12,000, that the preferred creditors other than Royle should stand the entire deduction necessitated by reason of such reduced consideration. The

226

difference in the consideration for the sale actually effected and that referred to in the said contract respecting the contemplated sale to Ingram, $1,500, should be apportioned pro rata among all preferred creditors. Increased costs of administration, if any, occasioned by the failure of the Ingram proposed purchase should also be so apportioned.

A contention is made that the order of the referee should be approved because such order is subject to the rule of res adjudicata. This contention is based on an order of the referee made February 6, 1934, a year and five months prior to the order now under review. The said order of February 6th was made upon recommendation of the trustee in bankruptcy, Emerson J. Wilson, "that proof of secured debt of William Royle be disallowed." The order reads: "It is the Order of this Court that the objections to the said claim be overruled on the ground and for the reason that this Court is without jurisdiction to go in back of the said judgment of the State Court, and on the further ground that the petitioner has been guilty of laches in presenting said matter to this Court and that the agreement and waiver entered into between said Trustee, or his representatives, and William Royle, or his representatives is binding on the Trustee."

There is nothing in this order to the effect that the Royle claim is "entitled to be paid in full prior to" the other secured claims or that the same constitutes "a first lien on the assets." A statement appearing in an affidavit filed in the hearing on review that the referee "ordered that the account be allowed as a preferred claim in the sum of $5000.00 without deduction" does not appear to find support in the order last above quoted or in the minutes of the proceedings before the referee. The question respecting the application of the rule of res adjudicata is without merit.

The order under review is set aside and the referee is directed to enter an order distributing the proceeds of the bankrupt estate pro rata among all the secured creditors, parties to the said agreement of January 18, 1933, and others named therein as entitled to such preference, in accordance with the amounts stated in said contract and in claims or modified claims or waivers based thereon.